IN THE UNITED STATES COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEREK HALL, | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO.; 1:21-CV-00728-DAE |
| | § | |
| UIPATH INC., | § | |
|    *Defendant*. | § | |

### PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, Derek Hall, and files this First Amended Original Complaint complaining of Defendant UiPath, Inc. and for cause of action would show the Court the following:

**I.**

### INTRODUCTION

1. This action seeks damages, attorneys' fees, taxable costs of the court, pre-judgment and post-judgment interest as a result of civilly wrongful conduct in violation of the laws of the United States and the State of Texas.

1.2 Plaintiff, by counsel, brings this action for damages and other legal and equitable relief for Defendant's violations of the Age Discrimination in Employment Act as well as under the law of the State of Texas.

**II.**

### THE PARTIES

2.1 Plaintiff is an individual who can be contacted through counsel.

2.2 Defendant is an entity that has been served.

## III.

## **JURISDICTION, VENUE AND CONDITION PRECEDENT**

3.1     The amount in controversy exceeds the jurisdictional minimum amount in controversy for this Court. The Plaintiff was employed with Defendant. This Court has federal question jurisdiction over Plaintiffs' claims pursuant to 29 U.S.C. §621 through §634.

3.2     This action lies in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1391(b) and (c) because it is the district where Defendant is located and where a substantial part of the facts that led to this claim occurred and thus is subject to jurisdiction and venue within this judicial district.

3.3     All conditions precedent have been performed or have occurred.

## IV.

## **FACTS**

4.1     Mr. Hall was employed by UiPath from November, 2018 until his termination on September 23, 2019 which followed an age discrimination and harassment claim made by Mr. Hall against his supervisor at the time, Carmel Smith. Following his termination, Mr. Hall began employment with Accelirate, Inc. in late November, 2019. Accelirate is a top 10 partner for UiPath in the United States. Accelirate was a perfect fit for Mr. Hall as he had already developed relationships with Accelirate's executive management team and its sales team in the Central and Western United States, while also mainstring the relationships he had previously developed with those at UiPath.

4.2     Mr. Hall's start at Accelirate went well. He was well received and there were absolutely no complaints regarding his work. At the company Christmas party on Saturday, December 14, 2019 in Miami he was introduced as the Vice President of Sales to the entire company.

4.3     The first day back to work after the Christmas party was December 16, 2019 and everything was business as usual for Mr. Hall. He corresponded multiple times with his manager, Matt Gallo, and no mention of any issues were made. However, on the afternoon of December 17, 2019 Mr. Hall received a call from Mr. Gallo informing him that his services were no longer needed and that December 17, 2019 would be his last day of employment with Accelirate. When Mr. Hall inquired as to why he was being terminated, Mr. Gallo informed him that he had received text or email messages from UiPath and that Mr. Gallo informed Mr. Hall that "it was not going to work." Mr. Gallo did not state who at UiPath had contacted him. Plaintiff later learned it was Ms. Smith. Mr. Gallo also declined to say what was said in the texts he received, but given that Mr. Hall was terminated and that UiPath represents about 90% of all Accelirate's consulting revenue, it is clear it was the text message and contacts Ms. Smith had with Accelirate that interfered with Mr. Hall's relationship with Accelirate as Mr. Gallo specifically referred to the text messages during the termination call.

4.4     After Plaintiff filed a charge of discrimination against UiPath based on its interference with his employment with Accelirate, UiPath admitted that Carmel Smith contacted Accelirate to discuss her "concerns" about Plaintiff and what he was doing with Accelirate. UiPath admitted that these concerns included the fact that Ms. Smith had allegedly been receiving complaints about Plaintiff and falsely asserted that Plaintiff was harassing Uipath employees trying to get them to leave their employment.  Ms. Smith also told Accelirate that she did not want them to assign Plaintiff to "her territory" which also led directly to Plaintiff's termination.  These contacts and false statements were obviously intended to get Plaintiff terminated.

4.5     Within days of these text messages and contacts from Ms. Smith containing false information, Accelirate terminated Plaintiff's employment specifically referencing Ms. Smith's text messages in the termination call. This "negative reference" directly led to Plaintiff's termination and as such is actionable under federal law.

4.6     There is no doubt that Carmel Smith was aware of Plaintiff's age discrimination complaint that he made to UiPath based on her discriminatory treatment against Plaintiff. Plaintiff first made the age discrimination complaint on August 29, 2019. The next day on August 30, 2019 Ms. Smith put Plaintiff on "performance focus plan" that contained performance goals that were impossible to meet. Plaintiff was given 30 days to meet the impossible goals.

4.7     UiPath did not even wait the full 30 days to see if Plaintiff could meet the impossible goals and instead terminated his employment on September 23, 2019.  Not satisfied with just terminating his employment, UiPath and Ms. Smith then made it their mission to interfere with Plaintiff's employment at Accelirate. This was done in retaliation for Plaintiff's age discrimination complaint he made against UiPath and Ms. Smith.

4.8     The actions of UiPath constitutes both illegal retaliation under the Age Discrimination in Employment Act and pleading alternatively, tortious interference with Mr. Hall's contractual relationship with Accelirate. As a result, Mr. Hall has suffered and will continue to suffer significant damages. Accelirate was a perfect fit for Mr. Hall and would have remained so if not for the interference with the relationship by a UiPath employee in retaliation for making an age discrimination complaint.

**V.**

**CAUSES OF ACTION**

5.1      The allegations contained in Paragraphs 4.1 through 4.8 inclusive are hereby incorporated by reference for all causes of action.

**Retaliation under the Age Discrimination in Employment Act**

5.2      The conduct of Defendant towards Plaintiff, through its agents, employees, managers, and supervisors, as set forth above constitutes retaliation in direct violation of the Age Discrimination in Employment Act ("ADEA").

5.3      Defendant retaliated against Plaintiff for making a discrimination complaint and otherwise opposing discrimination by the employer. See 29 U.S.C. §623(d). Plaintiff made a discrimination complaint and opposed a discriminatory practice by Defendant, suffered adverse employment actions as a result in that Defendant caused the termination of Plaintiff's employment at Accelirate and otherwise discriminated against him, and there is a causal connection between the making of the discrimination complaint and opposition to the discriminatory practice and the adverse employment actions. The unlawful practices committed by Defendant were and are a direct cause of Plaintiff's damages, as more fully set forth below.

**Tortious Interference with Contractual Relations**

5.4      Further pleading in the alternative, Plaintiff was employed by Accelirate. Defendant knew that. Defendant willfully and intentionally interfered with the relationship. Defendant knew of the consequences in communicating the false information about Plaintiff to Accelirate, and therefore intended to interfere with the relationship. Defendant's statements were known by Defendant to be

false or were made with reckless disregard for their falsity. This interference proximately caused Plaintiff's damages, as more fully set forth below.

## VI.

## DAMAGES

6.1     As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages or back pay, interest on back pay and front pay, future wages or front pay, employment benefits in the past and future, lost earnings in the past and future, and all lost benefits under the contract or employment relationship.

6.2     In addition and as a result of Defendant's unlawful and willful conduct, and the fact that Defendant did not have a good faith basis for its decisions, Plaintiff seeks liquidated damages in the amount of double the amounts owed listed above.

6.3     As a result of Defendant's actions, Plaintiff has been damaged in past and future loss of earnings and loss of earning capacity, loss of past and future income, loss of employment, loss of employment benefits, injury to character or reputation, and mental anguish.

6.4.    In addition, because Defendant has acted with actual malice, Plaintiff further seeks exemplary or punitive damages from Defendant.

## VII.

## ATTORNEYS' FEES AND EXPERT FEES

7.1     A prevailing party may recover reasonable attorneys' fees, expert fees, and costs under the ADEA. Plaintiff brings suit for these fees from Defendant. Plaintiff seeks all reasonable expert fees and attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal

work, any appeal to a court of appeals or supreme court, and post-judgment discovery and collection in the event execution on the judgment is necessary.

## VIII.

## JURY DEMAND

8.1     Plaintiff has demanded a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and, upon final trial, Plaintiff have Judgment against Defendant as requested above, and as follows:

1. Judgment against Defendant for all damages alleged in this petition;

2. Interest before and after judgment at the highest rate provided by law, until paid;

3. Costs of suit;

4. Reasonable and necessary attorneys' fees and expert witness fees;

5. Injunctive and declaratory relief;

6. Liquidated and punitive damages; and

7. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

THE MELTON LAW FIRM, P.L.L.C.
925 S. Capital of Texas Hwy., Suite B225
Austin, Texas 78746
(512) 330-0017 Telephone
(512) 330-0067 Facsimile


/s/ John F. Melton
John F. Melton
jmelton@jfmeltonlaw.com
State Bar No. 24013155
Michael W. Balcezak
State Bar No.: 24012236
Michael@jfmeltonlaw.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 30, 2021, a true and correct copy of the above and foregoing document was served via the Court's CM/ECF electronic service to:

email:  kfuqua@littler.com
Kelli C. Fuqua
Littler Mendelson, P.C.
100 Congress Avenue, Suite 1400
Austin, Texas 78701

email: chawilson@littler.com
Charles H. Wilson
Littler Mendelson, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010

*/s/ John F. Melton*
John F. Melton
