UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEREK HALL, | § | No. 1:21-CV-00728-DAE |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| UIPATH INC., | § | |
| | § | |
| *Defendant*. | § | |
| _____ | § | |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR HEARING

Before the Court is a Motion for Summary Judgment filed by

Defendant UiPath Inc. ("UiPath") on February 17, 2023. (Dkt. # 31.) UiPath

seeks summary judgment on all claims in the First Amended Complaint filed by

Plaintiff Derek Hall ("Hall") on September 30, 2021. (Dkt. # 7.) Hall filed a

Response in Opposition on March 15, 2023 (Dkt. # 35) and UiPath filed a Reply

on March 29, 2023 (Dkt. # 37). Hall filed a Motion for Hearing on UiPath's

Motion for Summary Judgment on June 23, 2023. (Dkt. # 38.)

Notwithstanding Hall's request, the Court finds this matter suitable for

disposition without a hearing. After careful consideration of the filings and

relevant case law, the Court **DENIES** Hall's Motion for Hearing (Dkt. # 38) and

1

**GRANTS** UiPath's Motion for Summary Judgment (Dkt. # 31) for the reasons that follow.

BACKGROUND

I.    <u>Factual Background</u>

On November 12, 2018, Hall began working as a Senior Account Executive for UiPath after being interviewed and offered the position by Carmel Smith ("Smith"), his direct supervisor during his tenure at UiPath.  (Dkt. # 31 at 6.) On August 29, 2019, Smith placed Hall on a 30-day performance improvement plan ("PIP").  (<u>Id.</u> at 7.)  Hall filed an internal age discrimination and harassment claim against Smith soon after.[1]  (<u>See</u> Dkt. # 7 ¶ 4.1.)

Hall was ultimately terminated from UiPath, with UiPath citing his "poor behavior in customer meetings" and failure to meet "any of the stated requirements of the PIP."  (Dkt. # 31-1 at 6.)  Hall states that he was terminated on September 23, 2019 (Dkt. # 7 ¶ 4.7); his termination letter from UiPath is dated October 1, 2019, and was not scheduled to take effect until November 12, 2019, after a period of garden leave (Dkt. # 31-1 at 70).  Hall was then hired by

---

[1] Although Hall maintains that he filed the discrimination claim on August 29, 2019, and was subsequently placed on a PIP on August 30, 2019 (Dkt. # 7 ¶ 4.6), email correspondence between Smith and Hall shows the PIP placement date to be August 29, 2019.  (Dkt. #31-1 at 30.)  Hall also confirmed in his deposition that he filed the discrimination complaint after receiving the PIP.  (<u>Id.</u> at 118.) (Question: "And after you received this PIP, you went to HR and filed a discrimination complaint; is that right?" Answer: "Correct.")

Accelirate in late November 2019 as Vice President of Sales for the Central and West regions. (See Dkt. # 7 ¶ 4.1; Dkt. # 31-1 at 158.) Accelirate "is a top 10 partner for UiPath in the United States." (Dkt. # 7 ¶ 4.1.) According to Hall's direct supervisor at Accelirate, Matt Gallo ("Gallo"), Hall did not disclose the true circumstances that led to his termination from UiPath before he was hired and instead claimed that "re-alignment" was the cause. (Dkt. #31-1 at 158.) Because Gallo primarily relied on the recommendation of a third party in deciding to hire Hall, he never spoke to Smith to confirm the reason Hall was no longer with UiPath. (Id.)

On December 2, 2019, one of Hall's new work colleagues at Accelirate, Nikky Shaffer ("Shaffer"), mistakenly sent an email to Hall at his former UiPath email address. (Dkt. # 31-1 at 84.) Smith, who had been monitoring Hall's UiPath inbox since his departure from the company, responded to the email by asking Shaffer if she "hired Derek or [if she] did not know he left UiPath," to which Shaffer replied that she had sent an email to his old address by mistake and that Hall had started working at Accelirate that very day. (Id. at 83.) There is no evidence of further correspondence between the two on the subject until Smith initiated a text message conversation on December 17, 2019. (Id. at 89.) In part, Smith's message read: "[W]e need to talk when I can come up for air but getting a lot of complaints on Derek. There was a reason I terminated him and

3

was under the impression he was not covering my territory which is absolutely my preference." (<u>Id.</u>) Shaffer responded: "Hi Carmel, thanks for the heads up, he reports into Matt, can we setup some time to discuss and figure out the best way forward?" (<u>Id.</u>) The pair agreed to reconvene in early January. (<u>Id.</u> at 93.)

That same day, on December 17, 2019, Hall was terminated from Accelirate. (<u>See</u> Dkt. # 7 ¶ 4.3.) The parties agree that termination decision was communicated to Hall via telephone but disagree about what was said in the call. (<u>See</u> Dkt. # 7 ¶ 4.3; Dkt. # 31 at 11.) Hall alleges that Gallo informed him that he received certain "text or email messages from UiPath," and that "it was not going to work," but that Gallo did not name who at UiPath had contacted him. (Dkt. # 7 ¶ 4.3.) UiPath, meanwhile, points to Gallo's declaration that no one at UiPath demanded Hall's termination and that he "never would have indicated" that to Hall. (Dkt. # 31-1 at 159.) Gallo states that the decision to terminate Hall was made for "Accelirate's own unique business reasons," which included Hall's communication and personality issues, complaints from Shaffer that Hall "made her feel uncomfortable," and Hall's lack of "relationship advantage" with anyone at UiPath. (<u>Id.</u> at 158–59.) Gallo considered Hall's "significant compensation package" to be unjustified "for someone who oversold his capabilities and did not prove to be a good fit with the Sales team." (<u>Id.</u> at 159.)

II.    <u>Procedural Background</u>

Hall filed his Original Complaint against UiPath on August 19, 2021, alleging (1) retaliation under the Age Discrimination in Employment Act ("ADEA") and (2) tortious interference with contractual relations.  (Dkt. # 1 ¶¶ 5.2, 5.4.)  UiPath filed a Motion to Dismiss on September 9, 2021 (Dkt. # 6), but the Motion was denied in light of Hall's First Amended Complaint, which was filed on September 30, 2021 (Dkt. # 7).  UiPath moved to dismiss for the second time on October 14, 2021 (Dkt. # 8), Hall filed a Response in Opposition on October 28, 2021 (Dkt. # 9), and UiPath filed a Reply on November 3, 2021 (Dkt. # 10).  This Court held a hearing on the second Motion to Dismiss (Dkt. # 12) on February 24, 2022, and ultimately denied the Motion without prejudice.  UiPath filed an Answer to Hall's First Amended Complaint on March 15, 2022.  (Dkt. # 17.)  UiPath filed the instant Motion for Summary Judgment on February 17, 2023 (Dkt. # 31), Hall filed a Response in Opposition on March 15, 2023 (Dkt. # 35), and UiPath filed a Reply on March 29, 2023 (Dkt. # 37).  Hall filed a Motion for Hearing on UiPath's Motion for Summary Judgment on June 23, 2023 (Dkt. # 38), and UiPath filed a Response on July 7, 2023 (Dkt. # 39).

LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) authorizes the grant of summary judgment if there is "no genuine dispute as to any material fact and the

5

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if "proof of its existence might affect the outcome of the case" and a dispute about a material fact is genuine if "the evidence would allow a reasonable jury to return a verdict for the nonmovant." Roy v. City of Monroe, 950 F.3d 245, 254 (5th Cir. 2020). The party seeking summary judgment bears the initial burden of informing the Court of "the basis for its motion" and identifying those portions of the record which it argues demonstrate "the absence of a genuine issues of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If successful, the burden shifts to the nonmoving party to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." McCarty v. Hillstone Rest. Grp., Inc., 864 F.3d 354, 357 (5th Cir. 2017). However, this burden cannot be met by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Id.

The Court views "all facts and inferences" in the light most favorable to the nonmoving party and resolves factual controversies in their favor, but "only when there is an actual controversy," or when "both parties have submitted evidence of contradictory facts." Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). In the absence of competent summary judgment evidence, the Court will not assume "that the nonmoving party could or would prove the necessary facts." Id. Summary judgment is proper in "*any* case where critical

evidence is so weak or tenuous on an essential fact that it could not support a

judgment in favor of the nonmovant."  Id.

DISCUSSION

I.    Claim for ADEA Retaliation

The ADEA prohibits employers from discriminating or retaliating

against an employee for "oppos[ing] any practice made unlawful by [the Act]."  29

U.S.C. § 623(d).  When analyzing a retaliation claim brought under the ADEA, the

Fifth Circuit applies a burden-shifting standard at the summary-judgment stage.

See Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 267 (5th Cir. 1994).

First, a plaintiff must first establish a prima facie case of retaliation.  Heggemeier

v. Caldwell Cnty., 826 F.3d 861, 869 (5th Cir. 2016).  If the plaintiff can establish

a prima facie case, the burden shifts to the defendant to present a "legitimate, non-

discriminatory reason for the adverse employment action."  Sherrod v. Am.

Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998).  Finally, the burden `s back to

the plaintiff to "adduce sufficient evidence that would permit a reasonable trier of

fact to find that the proffered reason is a pretext for retaliation."  Id.

Hall made an internal age discrimination complaint on August 29,

2019, while working at UiPath.  (Dkt. # 35 at 2.)  Hall alleges that UiPath

retaliated against him for making the discrimination complaint by providing his

subsequent employer, Accelirate, a negative reference nearly four months after his

7

complaint was first lodged.  (See Dkt. # 35 at 4.)  Hall further alleges that the
negative reference given by UiPath led to his ultimate termination from Accelirate
on December 17, 2019.  (Id. at 3.)

A.    Prima Facie Case

To establish a prima facie case of retaliation under the ADEA, a
plaintiff must show "(1) that he engaged in a protected activity, (2) that there was
an adverse employment action, and (3) that a causal link existed between the
protected activity and the adverse employment action."  Holtzclaw v. DSC
Commc'ns Corp., 255 F.3d 254, 259 (5th Cir. 2001).  The Court finds that the first
and second elements are met, but that Hall has not presented sufficient summary-
judgment evidence to establish a genuine issue of material fact as to the third
element.

i.    Statutorily Protected Activity

It is uncontested that Hall engaged in a statutorily protected activity
by filing an internal age discrimination complaint while at UiPath on August 29,
2019.  (See Dkts. ## 31, 37.)  The Court agrees that this element is met.

ii.    Adverse Employment Action

A negative reference qualifies as an adverse employment action and
thus may form the basis of a retaliation claim brought under the ADEA.  See
Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997) (holding that a post-

8

employment retaliation claim brought by a former employee is actionable); <u>Teague</u> <u>v. Williamson Cnty.</u>, No. 1:18-CV-1098-RP, 2021 WL 9710958, at *4 (W.D. Tex. July 14, 2021), <u>aff'd</u>, No. 22-50202, 2022 WL 16956794 (5th Cir. Nov. 16, 2022). However, negative reference cases in the Fifth Circuit primarily relate to references given to prospective employers in a pre-hiring context.  See <u>Allen v. Texas Dep't of</u> <u>Transp.</u>, 186 F. App'x 501, 501 (5th Cir. 2006); <u>Fields v. Phillips Sch. of Bus.</u>, No. 95-50045, 1995 WL 413024, at *1 (5th Cir. 1995).  The Fifth Circuit has not conclusively decided whether a negative reference given by a former employer to a subsequent employer after the employee has already been hired can form the basis of a retaliation claim.  As this case does not turn on the resolution of this issue, this Court assumes, without deciding, that it can.

To sustain a post-employment retaliation claim based on a negative reference, a plaintiff must prove that a negative reference was actually given. <u>Teague</u>, 2021 WL 9710958, at *4–5 (granting summary judgment because the plaintiff failed to meet her burden of demonstrating that her former employer provided a negative reference); <u>Moini v. Univ. of Texas at Austin</u>, 832 F. Supp. 2d 710, 728 (W.D. Tex. 2011) ("Without any evidence Defendants provided negative job references for [Plaintiff], this claim cannot survive.").

Here, apart from the initial email exchange between Smith and Shaffer on December 2, 2019 (Dkt. # 31-1 at 83–84), the only evidence regarding a

communication between UiPath and Accelirate concerning Hall is the series of text messages between Smith and Shaffer on December 17, 2019. (Id. at 89, 93.) The primary language within the text messages that refers to Hall's performance or conduct while at UiPath is: "There was a reason I terminated [Hall]." (Id. at 89.) However, Smith communicated this to Shaffer, a non-supervisory employee who is not alleged to have any direct influence over hiring and firing decisions at Accelirate. Smith explains in her declaration that she contacted Shaffer to discuss a legitimate business concern: Hall's "badgering [of] his old colleagues, and [Smith's] subordinates, at UiPath for business leads" and Hall covering her geographic sales territory. (Id. at 7–8.)

Assuming that this brief exchange between Smith and Shaffer qualifies as a reference, Hall has not offered evidence suggesting that a negative reference was actually given other than his general assertions that the information Smith provided was "false," "obviously intended to get Plaintiff terminated," and given in fulfillment of Smith and UiPath's "mission to interfere with Plaintiff's employment at Accelirate" (Dkt. # 7 ¶¶ 4.4, 4.7). Facially, the messages from Smith do not clearly indicate that she intended that Accelirate terminate Hall. Hall states that it was not true that he "was harassing UiPath employees to try to get them to leave" (Dkt. # 35-1 at 2) but does not deny that he had been contacting his former colleagues for business leads. Further, it appears from the record that

10

conferring with Accelirate about Hall or elaborating about her reasons for termination was a nonurgent matter for Smith as she suggested that they reconvene in January to further discuss the matter.  (Dkt. # 31-1 at 8.)

Hall adduces no evidence of additional conversations between Smith and any personnel at Accelirate about him, and the uncontroverted declarations from Smith and Gallo both indicate that there were none.  (See id. at 8, 157–59.) Without more, it is unlikely that the brief text conversation between Smith and Shaffer, a non-supervisory employee, qualifies as a negative reference.  However, because the instant case primarily turns on the causation prong of the prima facie case, the Court resolves the close question of the negative reference in favor of Hall and finds this element is met.

iii.    Causal Link

In the Fifth Circuit, the causation requirement of the prima facie case can be satisfied by "showing close timing between an employee's protected activity and the adverse action against him."  Garcia v. Pro. Cont. Servs., Inc., 938 F.3d 236, 241 (5th Cir. 2019).  When timing is the only evidence of retaliation, "the temporal proximity must be very close."  Munoz v. Seton Healthcare, Inc., 557 F. App'x 314, 321 (5th Cir. 2014).  There has been disagreement in the Fifth Circuit as to how proximate the protected activity and the negative employment action must be.  As cited by Hall in his filings, "four months has been found sufficient to

satisfy the causal connection for summary judgment purposes." See Evans v. City
of Houston, 246 F.3d 344, 354 (5th Cir. 2001).

However, the Fifth Circuit made clear in Besser v. Texas General
Land Office that the metric used in Evans was "not binding, or even persuasive,
precedent" indicating that the two and one-half month time lapse at issue in Besser
was sufficient to establish causation. Besser v. Texas Gen. Land Off., 834 F. App'x
876, 884 (5th Cir. 2020). The Court further noted that the United States Supreme
Court has "favorably cited a decision holding that three months is not within the
'very close' requirement," before concluding that "two and one-half months
between the protected activity and the adverse employment decision, standing
alone" was similarly insufficient to establish a causal link. Id. at 885 (citing Clark
Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). In accordance with Fifth
Circuit precedent, a temporal lapse of nearly four months between Hall's internal
complaint and his termination from Accelirate, by itself, is insufficient to establish
causation.

But, in addition to timing, Hall argues that his circumstantial evidence
can establish causation. Hall cites "evidence that Carmel Smith knew of the
protected activity, put him on a performance plan one day after he made the
discrimination complaint, gave Plaintiff only thirty days to meet impossible goals,
and then even failed to give Plaintiff 30 days to meet the impossible goals and

12

terminated him before the 30 days were up." (Dkt. # 35 at 6.) The Court will evaluate each of these circumstances in turn.

Hall makes the conclusory statement in his First Amended Complaint that "there is no doubt that Carmel Smith was aware of Plaintiff's age discrimination complaint" at the time he was placed on a PIP, yet does not provide any corroborating evidence for this proposition. Hall makes the same argument in his Response to the Motion for Summary Judgment by stating that "there is evidence that Carmel Smith knew of the protected activity," without pointing out such evidence to the Court. (See Dkt. # 35 at 6.) Further, Hall's representation is contradicted by evidence on record and the statements made by Hall in his deposition. Email correspondence from Smith to Hall containing the "Performance Focus Plan" was sent on August 29, 2019, at 11:10 a.m.—the same day Hall made his discrimination complaint. (Dkt. #31-1 at 30.) In his deposition, Hall was asked: "After you received this PIP, you went to HR and filed a discrimination complaint; is that right?" to which Hall answered: "Correct." (Id. at 118.) As the decision to place Hall on a PIP predates his discrimination complaint, it cannot logically show causation. See Peace v. Harvey, 207 F. App'x 366, 368 (5th Cir. 2006) ("A number of incidents upon which [Plaintiff] relies pre-date her EEOC complaint, and thus cannot logically support a retaliation claim.").

Moreover, Smith avers that Hall's "performance failures" and unsatisfactory "client-relationship skills" were the true motivators behind her decision to place him on a PIP. (Dkt. #31-1 at 5.) In his deposition, Hall admitted that he "didn't communicate to [UiPath's] expectations," that he had zero renewals since he was hired, and that there were UiPath customers who did not want to work with him. (Id. at 110, 116–17.)

Second, Hall alleges that the sales goals contained in his performance plan were "impossible" to meet, but does not provide any evidence as to the impossibility of those goals or highlight any discrepancies between said goals and the original expectations of his position while at UiPath. (See Dkt. # 35 at 6.)

Lastly, Hall contends that he was terminated from his position on September 23, 2019, before the 30 days allotted by the PIP. (Dkt. # 7 ¶ 4.7.) Hall's termination letter from UiPath is dated October 1, 2019, and his termination was not set to become effective until November 12, 2019, after a period of "garden leave." (Dkt. # 31-1 at 123.) The assertion that Hall was terminated on "September 23, 2019, only three and a half weeks after he made the age discrimination complaint," is not corroborated by any evidence in the record. (See Dkt. #35 at 2.)

The conclusory statements proffered by Hall and a temporal separation of nearly four months is insufficient to support an inference of

14

causation.  Thus, the Court finds that the third element of the prima facie case is not met and Hall's claim of unlawful retaliation against UiPath fails as a matter of law.

      B.     <u>Legitimate Non-Discriminatory Reason and Pretext</u>

        In addition to the failure of his prima facie case, Hall has failed to rebut UiPath's non-discriminatory reasons for their actions.  UiPath argues that Smith's communication with Shaffer on December 17, 2019, regarding the "complaints on [Hall]" constitute legitimate business concerns that "are not facially retaliatory."  (Dkt. # 37 at 3.)  UiPath has presented uncontroverted evidence, by way of declaration, that Hall was persistently contacting "Mark Waldheim and Rob Friedman," both employees at UiPath, for "business leads." (Dkt. # 31-1 at 8.)  Hall denies that he was "harassing UiPath employees to try to get them to leave," but does not refute that he was contacting them for potential sales leads.  (<u>See</u> Dkt. # 35-1 at 2.)  Thus, Hall has failed to present evidence that would lead a "reasonable and fair-minded person" to conclude that the explanation proffered by UiPath was pretext for unlawful retaliation.  <u>See Sherrod</u>, 132 F.3d at 1123.  As a result, summary judgment on Hall's ADEA retaliation claim against UiPath is proper.

II.    <u>Claim for Tortious Interference with Contractual Relations</u>

In his Amended Complaint, Hall asserts a claim for tortious interference with contractual relations against UiPath, arguing that UiPath "willfully and intentionally interfered with" his relationship with Accelirate. (Dkt. # 7 ¶ 5.4.) Although Hall responded in opposition to UiPath's Motion for Summary Judgment (Dkt. # 31) on the ADEA retaliation claim, he has failed to address the tortious interference claim in his briefings. (<u>See</u> Dkt. # 35.) Thus, Hall has waived any claim for tortious interference against UiPath. <u>See</u> <u>Oporto v. City of El Paso</u>, No. EP-10-CV-110-KC, 2011 WL 13196177, at *5 (W.D. Tex. Jan. 9, 2011) (finding that the plaintiff's failure to brief a claim in its response to the defendants' motion for summary judgment resulted in the waiver of the claim).[2]

In addition, the Court finds that Hall's state-law tortious interference claim is preempted by the Texas Commission on Human Rights Act ("TCHRA"), which provides the "exclusive state-law means for redress of employment discrimination" and preempts claims brought under other state-law theories.[3] <u>See</u>

_____

[2] The Court also notes that competent summary-judgment evidence reflects that Hall misrepresented the reason for his departure from UiPath during his interview with Accelirate. (<u>See</u> Dkt. # 31-1 at 158.) Hall did not tell Gallo that he had been "terminated for performance or conduct issues," but instead represented that he was no longer employed with UiPath due to "a UiPath re-alignment." (<u>Id.</u>)

[3] The Commission on Human Rights has been replaced with the Texas Workforce Commission civil rights division, but courts continue to refer to Chapter 21 of the

Cook v. Fid. Invs., 908 F. Supp. 438, 442 (N.D. Tex. 1995); see also Bates v.

Humana, Inc., No. CIV. A. SA-92-CA-432, 1993 WL 556416 (W.D. Tex. Oct. 12,

1993) ("Because the Court finds that any common law claims arising from

Defendants' discriminatory behavior have been preempted by the Texas Human

Rights Acts, the Court will grant Defendants' summary judgment.")  Because

Hall's tortious interference claim is premised on the same bundle of facts as an

employment discrimination claim, the proper remedy in Texas lies under the

TCHRA.[4]  See Martin v. Kroger Co., 65 F. Supp. 2d 516, 562 (S.D. Tex. 1999),

aff'd, 224 F.3d 765 (5th Cir. 2000) ("[T]o the extent that [Plaintiff's] claim of

tortious interference with existing business relations is merely a restatement of her

employment discrimination claim, it is foreclosed by the TCHRA.").  Thus,

summary judgment on Hall's tortious interference claim against UiPath is proper.

CONCLUSION

Based on the foregoing, the Court **GRANTS** UiPath's Motion for

Summary Judgment (Dkt. # 31) on all claims and **DENIES** Hall's Motion for

---

Texas Labor Code as the TCHRA or CHRA.  See Tex. Lab. Code § 21.0015;
Waffle House v. Williams, 313 S.W.3d 796, 798 n.1 (Tex. 2010).

[4] The Court notes that Hall does not bring a claim under the TCHRA.  However,
common law tort claims may be preempted by the TCHRA even if the plaintiff
does not bring a claim under the TCHRA.  See Waffle House, Inc., 313 S.W.3d at
803 (finding that "employer liability for unwanted sexual touching by a coworker
. . . is limited to a tailored TCHRA scheme that specifically covers employer
liability for sexual harassment").

17

Hearing (Dkt. # 38).  The Clerk's office is instructed to **ENTER JUDGMENT** and **CLOSE THE CASE**.

      **IT IS SO ORDERED**.

      **DATED:** Austin, Texas, August 8, 2023.

_____
David Alan Ezra
Senior United States District Judge